IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DARRELL LEE HALL,                    §
TDCJ #1330580,                       §
                                     §
            Petitioner,              §
                                     §
v.                                   §          CIVIL ACTION NO. H-08-0621
                                     §
NATHANIEL QUARTERMAN, Director,      §
Texas Department of Criminal Justice - §
Correctional Institutions Division,  §
                                     §
            Respondent.              §

## MEMORANDUM AND ORDER

State inmate Darrell Lee Hall (TDCJ #1330580) has filed a petition under 28 U.S.C.

§ 2254, seeking a federal writ of habeas corpus to challenge a state court felony conviction.

He has filed an extensive memorandum in support of his claims.  (Doc. # 2).  The respondent

has filed a motion for summary judgment, arguing that Hall is not entitled to relief.  (Doc.

# 10).  Hall has filed a response.  (Doc. # 13).  After considering all of the pleadings, the state

court records, and the applicable law, the Court grants the respondent's motion and dismisses

this case for reasons that follow.

## I.      BACKGROUND AND PROCEDURAL HISTORY

A state grand jury returned an indictment against Hall on May 27, 2005, accusing him

of aggravated robbery with a deadly weapon, namely, a firearm, in Harris County cause

number 1021456.  The State enhanced that indictment for purposes of punishment with

allegations that Hall had at least two prior felony convictions.   Hall entered a plea of not

guilty to the aggravated robbery charges lodged against him and elected to have a jury trial.

At trial, the State presented testimony from the robbery victim, Julian Landaverde. Landaverde testified that Hall confronted him at a southwest Houston-area gas station early on the morning of March 15, 2005, and asked if he was going to buy gas. *See Court Reporter's Record*, vol. 4, at 35-38. Landaverde said that he was, but told Hall that he did not need any help. *Id.* at 37-39. Hall insisted, taking a credit card from his pocket and putting it into the gas pump. *Id.* at 39-40. Hall asked Landaverde how much gas he wanted, and Landaverde told him $20 worth. *Id.* After Hall pumped that amount, he asked Landaverde for $20 in cash and offered to fill the van's other gas tank for $10 more. *Id.* at 40-41. Landaverde gave Hall $20 but said that he had no more money. *Id.* at 41.

After taking the $20, Hall asked to borrow Landaverde's cell phone. *Id.* at 41-42. Landaverde retrieved it from the dashboard of his van, where it sat next to his wallet. *Id.* at 42-43. Landaverde overheard Hall use the phone to call a woman to pick him up at the gas station. *Id.* at 43. Just then a black car pulled up alongside the van. *Id.* Hall then told Landaverde to give him his money. *Id.* When Landaverde told Hall that he did not have any more money, Hall cursed at him and took out a gun. *Id.* at 43-44. Hall threatened Landaverde, demanded his money, and pointed the firearm in his face. *Id.* at 44. Landaverde gave Hall his wallet, which contained approximately $200. *Id.* at 44, 48. Hall took Landaverde's wallet and cell phone and got into the black car that had pulled up along side the van. *Id.* at 47. As the black car left the gas station, Landaverde woke his brothers — who had been sleeping in the back of the van — and wrote down the license plate number. *Id.* at 48-49. He then ran into the gas station to report the robbery. *Id.* Landaverde provided the black car's license plate number and a description of the person who robbed him to

2

Houston Police Officer Roosevelt Lewis, who prepared a report concerning the incident. *Id.* at 22-25.

Subsequently and independently, Houston Police Officer Warren Lyons encountered the black car at a nearby apartment complex.[1] Officer Lyons testified that, when he arrived at the apartment complex, Hall jumped from the passenger side of the vehicle, blurted out "He's back there," and ran off in the direction he had indicated. *Id.* at 83. Officer Lyons attempted to follow Hall, who disappeared, but eventually returned to the black car. *Id.* Suspicious of Hall's outburst, Officer Lyons checked the license plate and learned that the car had been identified as the getaway vehicle in the aggravated robbery involving Julian Landaverde. *Id.* Upon learning that the robbery suspect had not been identified, Officer Lyons questioned the female who was sitting in the car.[2] *Id.* She identified Hall as the man who had jumped from the vehicle and told him that Hall was living at the apartment complex with an acquaintance named Alvin Stewart. *Id.* at 84. Officer Lyons learned Hall's full name from Stewart and referred it to an investigator, who obtained a photograph for the

---

[1]     Hall complains that Officer Lyons failed to accurately identify Hall's car. Officer Lyons initially testified that the car was white, tan, or gold, but he later remembered that the car was black after looking at his report. *See Court Reporter's Record*, vol. 4, at 72, 82. On cross-examination, Lyons admitted he was mistaken when he initially said the car was white, tan, or gold. *Id.* at 82, 87. Apparently, the car was stolen. *Id.* at 72. The record explains that Officer Lyons was dispatched to the apartment complex to investigate an assault after Hall's girlfriend reported that he was beating her. *Id.* at 79. Hall's girlfriend was the woman seated in the car with him when Officer Lyons arrived. *Id.* This information was not conveyed to the jury, as the trial court refused to allow the State to present evidence about these extraneous offenses during the guilt/innocence phase of the proceeding. *Id.* at 72-81.

[2]     Hall identifies the female as Naomi Watson.

purpose of obtaining Hall's identification as the perpetrator of the aggravated robbery. *Id.* at 86-87.

Houston Police Detective Paul Reese, who investigated the robbery, testified that Landaverde immediately picked Hall out of the photographic line-up that he had prepared. *Id.* at 92-93.  Landaverde also identified Hall at trial and he testified that Hall was definitely the man who threatened him with a firearm before taking his wallet and cell phone. *Id.* at 37-38.  Detective Reese testified that the pistol Landaverde described qualified as a deadly weapon. *Id.* at 97.  After hearing all of this evidence, a jury in the 248th District Court of Harris County, Texas, found Hall guilty of aggravated robbery as charged in the indictment.

During the punishment phase of the trial, Hall stipulated that he had as many as eight prior convictions dating back to 1990, for possession of a controlled substance in cause number 973865, possession of a controlled substance in cause number 899915, evading arrest in cause number 9319029, delivery of cocaine in cause numbers 534728, 545118, and 585822, theft by receiving in cause number 9234324, and possession of a controlled substance in cause number 672850.  *See Court Reporter's Record*, vol. 5, at 16; State's Exhibits 2 & 3.  The State presented additional evidence that, shortly before he robbed Landaverde in March of 2005, Hall approached an 81-year-old woman named Ola Sprague while she was doing yard work and offered to do the work for her. *Id.* at 21-26.  Hall then asked to use her phone and followed her inside the house. *Id.* at 27-28.  When Sprague left the room momentarily to get some Kleenex tissues that Hall had requested, Hall stole her

wallet, which contained credit cards and money. *Id.* at 28-30. When Hall left her home that day, Sprague noticed that he was driving a black car. *Id.* at 31.

Hall testified at the punishment phase and admitted having a lengthy criminal record and a drug problem. *Id.* at 38-41. Hall denied robbing Landaverde, explaining that he was at the gas station "helping another lady who had a flat tire" and that he was "on drugs" at the time of the robbery. *Id.* at 41. Hall insisted that Landaverde was lying. *Id.* Hall admitted being at Ola Sprague's home, but he testified that his roommate, Alvin Stewart, took her wallet. *Id.* at 41-44. Detective Reese testified that Sprague's wallet was recovered from Hall's room at the apartment that he shared with Stewart. *Id.* at 18. After hearing all of the testimony and argument by counsel, the jury sentenced Hall to 40 years' imprisonment.

On direct appeal, Hall argued that the evidence was legally insufficient and that the trial court erred by admitting a hearsay statement. The intermediate court of appeals rejected all of Hall's arguments and affirmed the conviction in an unpublished opinion. *See Hall v. State*, No. 01-05-00919-CR, 2006 WL 1653828 (Tex. App. — Houston [1st Dist.] June 15, 2006). Thereafter, the Texas Court of Criminal Appeals refused Hall's petition for discretionary review.

Hall challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure. In that application, Hall argued that his conviction should be set aside because: (1) exculpatory evidence of his actual innocence was "withheld from the jury"; (2) there was "no evidence" to support the jury's verdict; (3) the prosecutor engaged in misconduct by "sending subliminal messages to jurors" about his

guilt and by failing to show a videotape at trial; (4) the police violated due process by failing to investigate or interview two eye witnesses or subpoena them to testify at trial; (5) the trial court erred by allowing the prosecutor to ask "commitment questions" during voir dire; (6) the prosecutor improperly used peremptory challenges to exclude all prospective black jurors; (7) he was denied effective assistance of counsel at trial and on appeal; (8) the trial court erred by failing to include a full definition of "reasonable doubt" in the jury instructions; (9) the prosecutor engaged in improper argument; (10) the State's witnesses committed perjury; (11) the trial court erred by failing to follow statutory procedures; (12) he was denied a "full voir dire"; (13) the trial court erred by failing to grant a mistrial after the prosecutor was caught "sending subliminal messages" to the prospective jurors; (14) the trial court erred by excluding prospective jurors for cause; (15) the trial court erred by not holding a pretrial hearing to challenge the indictment; and (16) defense counsel, who also represented Hall's brother "in a divorce matter," had a conflict of interest.[3]

The state habeas corpus court, which also presided over the trial, entered findings of fact and concluded that most of Hall's claims (grounds 2-6, 8-15) were procedurally barred from review. The state habeas corpus court concluded further that, regarding the rest of his properly raised claims (grounds 1, 7, and 16), Hall was not entitled to relief. The Texas Court of Criminal Appeals agreed and denied relief based on the findings and conclusions

---

[3]   Hall raises the same claims in his federal petition as on state habeas review, but in a different order. For ease of reference, the Court has re-ordered the claims found in his state court application to match the order that they are listed in Hall's federal habeas corpus petition.

of law made by the trial-level habeas court.  *See Ex parte Hall*, No. 68,951-01 at 264-67

(Tex. Crim. App. Jan. 9, 2008).

Hall now seeks a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state

court conviction.  Hall contends that he is entitled to relief for the same reasons presented in

state court.  The respondent argues that Hall is not entitled to relief on any of his claims

under the governing federal habeas corpus standard of review set forth below.

## II.     STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism

and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214

(1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies

to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying

the principles of federalism, comity, and finality of judgments, the AEDPA "substantially

restricts the scope of federal review of state criminal court proceedings." *Montoya v.

Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the federal habeas corpus statutes

amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential

standard for evaluating state-court rulings, . . . , which demands that state court decisions be

given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal

citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their

claims in state court and to exhaust all state court remedies through proper adjudication. *See*

28 U.S.C. § 2254(b).  To the extent that the petitioner's claims were adjudicated on the

merits in state court, the AEDPA standard applies.  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).  The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

(1)     was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2);  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Id.*

Pure questions of fact are governed by § 2254(d)(2).  *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court as well.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir.

2004)).  The petitioner's claims for relief are examined below under the applicable legal standard.

## III.    DISCUSSION

The respondent argues that all of Hall's claims are barred by the doctrine of procedural default, with the exception of grounds 1, 7, and 16 listed in the petition and supporting memorandum.  Those grounds are as follows: (1) the State withheld exculpatory evidence of Hall's actual innocence; (2) Hall was denied effective assistance of counsel at trial and on appeal; and (3) Hall's trial attorney labored under a conflict of interest. Those grounds for relief are addressed further below, following a discussion about the doctrine of procedural default.

### A.    Procedural Default

The state habeas corpus court found that most of the grounds for relief presented in Hall's state habeas application (grounds 2-6, 8-15) were barred from review for procedural reasons.  In particular, the state habeas corpus court concluded that Hall's complaints of prosecutorial misconduct and trial error were barred by his failure to raise them properly on direct appeal, and that his claims challenging the sufficiency of the evidence were not otherwise cognizable on state habeas review.  *See Ex parte Hall*, No. 68,951-01 at 264-65 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998) and *Ex parte Christian*, 760 S.W.2d 659, 660 (Tex. Crim. App. 1988)).  The Texas rule barring habeas review of claims that were not properly presented on direct appeal is an "adequate state ground capable of barring federal habeas review."  *Scheanette v. Quarterman*, 482 F.3d 815, 827 (5th Cir. 2007) (citing *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004)).  Likewise,

10

it is well established that where a habeas petitioner has failed to raise an insufficiency-of-the-evidence claim on direct appeal, his claim is barred by the doctrine of procedural default. *See West v. Johnson*, 1385, 1398 n.18 (5th Cir. 1996); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

Hall's failure to raise these claims in a procedurally proper manner deprived the state court of the opportunity to review his allegations, resulting in a procedural default. *See Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Because the last state court to consider these claims expressly and unambiguously based its denial of relief on a state procedural default, these claims (grounds 2-6, 8-15) are also barred from federal review. *See Coleman*, 501 U.S. at 729; *Amos*, 61 F.3d at 338.

Where a state prisoner has committed a procedural default, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that the cause and prejudice standard is "grounded in concerns of comity and federalism"); *Coleman*, 501 U.S. at 750 (recognizing "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them").

11

To show "cause," a petitioner must establish that an external factor objectively impeded his ability to comply with state procedural rule at issue. *Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) (citation omitted). "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997). To show "actual prejudice," a petitioner must establish "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Moore*, 534 F.3d at 463. Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000). Outside the capital sentencing context, the fundamental miscarriage of justice exception to the cause requirement of the procedural default doctrine is limited to cases in which the petitioner can show that "a constitutional violation has ' probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

Hall does not demonstrate that the fundamental-miscarriage-of-justice exception applies in this case because, for reasons discussed further below, he does not demonstrate that he is actually innocent of the underlying offense or that, based on reliable evidence not presented at trial by reason of a constitutional violation, it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *See House v. Bell*, 547 U.S. 537 (2006); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Likewise, Hall does not demonstrate the requisite cause for his

procedural default.[4]  "Absent a showing of cause, it is not necessary for the court to consider

whether there is actual prejudice." *Hughes v. Quarterman*, 530 F.3d 336, 343 (5th Cir. 2008)

(quoting *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996)).  Nevertheless, in this instance

the Court concludes that Hall also fails to make a persuasive showing that actual prejudice

will result from the procedural default because, based on its review of the entire record, it

does not appear that any of his defaulted claims have merit.

In conclusion, Hall fails to establish that any exception to the doctrine of procedural

default applies in this case.  Therefore, the above-referenced claims (grounds 2-6, 8-15) are

procedurally barred from federal review.  The respondent is entitled to summary judgment

on this issue.  Hall's remaining claims (grounds 1, 7, and 16) are discussed further below.

### B.      Withholding Exculpatory Evidence

In the first ground listed in his petition, Hall contends that he is entitled to relief

because the State withheld evidence in the form of a videotaped interview between Hall and

Detective Reese.  (Doc. # 2, Supporting Memorandum, at 6-15).  According to Hall,

Detective Reese told him that the robbery had been captured on a video surveillance camera

operating at the gas station where the robbery occurred.  In fact, there was no surveillance

videotape of the offense.  Notwithstanding this fact, Detective Reese reportedly told Hall that

---

[4]      Hall does claim that he received ineffective assistance of counsel at trial and on direct
appeal, arguing that this ineffectiveness operates as cause for his default.  Ineffective
assistance of counsel may, in some circumstances, constitute cause for a procedural default.
*See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  As discussed further below, however,
Hall's allegations do not establish that he was denied effective assistance at trial or in
connection with his appeal.  Accordingly, his ineffective-assistance allegations do not
establish cause for his procedural default in this instance.

the surveillance videotape showed Hall commit the offense but did not show a deadly weapon.  After Detective Reese made this assertion, Hall admitted that he was at the gas station and that he took Landaverde's cell phone, but insisted that there was no robbery.  Hall also references an affidavit executed by Naomi Watson, who said that Houston police officers wanted her to testify falsely about the robbery, the stolen car, and Hall's gun possession.  Hall claims, therefore, that the State withheld or suppressed exculpatory evidence of his actual innocence.[5]

The government's suppression of favorable evidence that is material to guilt or innocence violates a defendant's right to due process under *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The government's duty to disclose extends to both impeachment and exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985).  To establish a *Brady* violation, a defendant must prove that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant because it was either exculpatory or impeaching; and (3) the evidence was material. *See United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citations omitted).  Evidence is material under *Brady* when there is a "reasonable probability" that the outcome of the trial would have been different if the suppressed evidence would have been disclosed to the defendant. *See United States v. Moore*, 452 F.3d

---

[5]     In support of his claim of actual innocence, Hall contends that he was not allowed to testify on his own behalf and that the gas station attendant who was present during the robbery was not called to testify.  Claims of actual innocence, standing alone, are not cognizable on federal habeas corpus review. *See Foster v. Quarterman,* 466 F.3d 359, 367-68 (5th Cir. 2006) (citing *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000)).  To the extent that Hall claims that his testimony and that of the gas station attendant were relevant to his defense of actual innocence, these allegations are considered below in connection with Hall's contention that he received ineffective assistance of counsel at his trial.

382, 387-88 (5th Cir. 2006).  A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.

The state habeas corpus court rejected this claim, implicitly finding that Hall failed to show that the State withheld exculpatory evidence in violation of *Brady*.  The record does not disclose a valid *Brady* claim under these circumstances because, by Hall's own admission, his attorney knew about the videotaped interview between Hall and Detective Reese.  The record reflects that Hall's attorney cross-examined Detective Reese about the videotaped statement and attempted to get Detective Reese to admit that he lied to Hall about the existence of a surveillance videotape depicting the offense in order to trick Hall into making an admission about his involvement.  *See Court Reporter's Record*, vol. 5, at 18-19.  Likewise, the affidavit from Naomi Watson was obtained by Hall, who filed the affidavit with the Harris County Clerk's Office on his own behalf.  *See Clerk's Record*, at 12-16.

Because Hall fails to show that the above-referenced evidence was suppressed by the State, he fails to demonstrate that the prosecutor withheld material, favorable evidence in violation of *Brady*.  Absent such a showing, Hall fails to establish that the state court's decision to reject his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).  Accordingly, Hall is not entitled to a federal writ of habeas corpus on this issue.

### C.    Ineffective Assistance of Counsel

Hall contends that he is entitled to relief because his criminal defense counsel, Ruth Yvonne Burton, performed in a constitutionally ineffective manner at his trial.  Hall complains further that his appellate attorney, Ted Doebbler, was ineffective during his

appeal. The state habeas corpus court entered findings of fact and conclusions of law, rejecting all of Hall's ineffective-assistance allegations. *See Ex parte Hall*, No. 68,951-01 at 258-61, 264-67. The Texas Court of Criminal Appeals adopted the state habeas corpus court's findings and denied relief.

Hall contends that the state court's decision was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes the test for ineffective assistance of counsel. To prevail on an ineffective-assistance claim, a habeas petitioner must establish both elements of the *Strickland* test by showing that (1) counsel's representation was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2002) (reciting the two-prong *Strickland* test). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

To establish deficient performance, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

Even if defense counsel committed an error, a petitioner must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)). A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Hall has raised numerous allegations of ineffective assistance, many of which overlap. For ease of analysis, the Court has grouped Hall's allegations into the following categories: (1) failure to file motions; (2) failure to interview or call witnesses; (3) inadequate pretrial investigation; (4) failure to raise a *Batson* objection during jury selection; (5) failure to ask sufficient questions during jury selection; (6) failure to make an opening statement; (7) failure to object to the prosecutor's comments; (8) failure to present defensive theories; (9) inadequate cross-examination and impeachment; (10) denial of the right to testify; (11) failure to request a jury instruction; (12) failure to object to the grand jury composition; (13) failure to consult and general ineffectiveness; and (14) ineffective assistance on appeal.

Notably, the state habeas corpus court rejected Hall's ineffective-assistance claims after considering an affidavit from his trial counsel (Ms. Burton) along with the trial court records. *See Ex parte Hall*, No. 68,591-01 at 264-66. In rejecting Hall's claims, the state habeas corpus court found that the facts alleged in counsel's affidavit were "true" and that

17

her affidavit was "credible."  *Id.* at 264.  The state court's fact findings and credibility

determinations are entitled to the presumption of correctness found at 28 U.S.C. § 2254(e)(1).

*See Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Galvan v. Cockrell*, 293 F.3d

760, 764 (5th Cir. 2002).  "The presumption is especially strong when the state habeas court

and the trial court are one in the same," as they were in this case.  *Clark v. Johnson*, 202 F.3d

760, 764 (5th Cir. 2000); *see also Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A

trial court's credibility determinations made on the basis of conflicting evidence are entitled

to a strong presumption of correctness and are 'virtually unreviewable' by the federal

courts.") (citations omitted).  Hall fails to meet his burden to rebut the state court's credibility

finding with clear and convincing evidence in this instance.  His claims concerning his

counsel's alleged deficiencies are examined below in light of the deferential AEDPA

standard.

### 1.    Failure to File Motions

In several related grounds, Hall argues that his trial attorney was deficient for failing

to file motions on his behalf.  (Doc. # 2, Supporting Memorandum, at 83-84, 90-91, 129-30).

Arguing that there was "no evidence" to support the charges, Hall contends that Burton was

deficient because she failed to file a motion to dismiss or quash the indictment at the end of

the guilt/innocence phase of the trial.  Insisting that the State's entire case rested on the

uncorroborated testimony of the victim, Hall complains further that Burton was deficient for

failing to raise a challenge to the sufficiency of the evidence before the trial court.  In

addition, Hall argues that Burton failed to file motions to challenge his arrest for lack of

probable cause and that she failed to file a motion to request a copy of the grand jury testimony in his case.  These claims are without merit.

As the respondent correctly notes, lack of evidence is not a recognized basis for challenging the sufficiency of the State's charging instrument.  *See* TEX. CODE. CRIM. PROC. arts. 27.03, 27.08, and 27.09 (West 2008).  Accordingly, Hall's counsel was not deficient for failing to file a motion to dismiss or quash the indictment for lack of evidence.

With respect to Hall's allegation that his counsel failed to challenge the sufficiency of the evidence, the record reflects that Burton did make a motion for an instructed verdict at the close of the State's case-in-chief, citing the State's failure to prove that Hall robbed the victim with a "firearm," as alleged in the indictment.  *See Court Reporter's Record*, vol. 4, at 99.  The trial court overruled that motion.  *See id*.  As for his contention about the verdict being supported only by uncorroborated testimony, Hall concedes that the victim identified him as the man who robbed him at gunpoint.  The victim's testimony, standing alone, is sufficient to support the conviction for aggravated robbery.  *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App. — Houston [14th Dist.] 2005, pet. ref'd) (citations omitted). Hall fails to show that his trial attorney was deficient for failing to file a motion in this regard.

To the extent that Hall claims that police lacked probable cause to effect his arrest, the respondent notes that Hall was arrested pursuant to a warrant after the victim identified him as the perpetrator from a photographic line-up.  *See Court Reporter's Record*, vol. 4, at 51, 90-94.  Hall does not allege or show that his pretrial identification was tainted by unduly

suggestive and constitutionally defective procedures.  Hall does not otherwise show that defense counsel had any other valid ground to challenge his arrest.  Accordingly, Hall does not demonstrate that his counsel was deficient for failing to challenge his arrest.

Hall claims that Burton should have requested grand jury testimony of the State's witnesses to disclose inconsistencies.  The Texas Code of Criminal Procedure provides: "(a) The proceedings of the grand jury shall be secret" and "(d) The defendant may petition a court to order the disclosure of information otherwise made secret by this article . . . [upon] a showing by the defendant of a particularized need." TEX. CODE CRIM. PROC. ANN. art. 20.02 (Vernon 2000).  A particularized need is not shown simply because the requested testimony pertains to a key prosecution witness, or that there is a "need" to locate inconsistencies in a witness's testimony. *See Bynum v. State*, 767 S.W.2d 769, 782-83 (Tex. Crim. App. 1989); *Martinez v. State*, No. 01-06-01164-CR, 2008 WL 4427660, *10 (Tex. App. — Houston [1st Dist.] Oct. 2, 2008, no pet.).  Hall does not demonstrate a particularized need for the grand jury testimony or show how it was relevant to his defense.  Thus, Hall fails to show that his attorney was deficient for failing to file a motion to request copies of the grand jury testimony.

The decision to file motions "falls squarely within the ambit of trial strategy." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (quoting *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)).  In this instance, Hall does not demonstrate that his counsel failed to make a valid motion in pursuit of a legitimate defensive theory.  *See Lovett v. State of Florida*, 627 F.2d 706, 708 (5th Cir. 1980) ("Counsel for a criminal defendant is not

required to pursue every path until it bears fruit or until all conceivable hope withers."). Absent a showing that counsel failed to file a meritorious motion and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Accordingly, Hall is not entitled to relief on his claim that his counsel failed to file motions.

### 2.     Failure to Interview or Call Witnesses

In several related grounds, Hall complains that Burton was deficient for failing to request a continuance for the purpose of interviewing several defense witnesses, including Naomi Watson, Jenovah Peoples, the gas station attendant who was working when the robbery occurred, and Landaverde's brothers. Hall likewise complains that his counsel failed to call these individuals as witnesses at his trial.  (Doc. # 2, Supporting Memorandum, 85-89; 97-100; 117-19).

Hall alleges that Naomi Watson, who was sitting in the black car when Officer Lyons traced its license plates to the aggravated robbery, would have testified that police officers tried to force her to lie about the robbery, which she claims did not occur.  Hall claims that

Jenovah Peoples would have testified that he was helping her change a tire at the gas station when the robbery occurred and that, although Hall intended to ask the victim for money, Hall did not possess a deadly weapon and did not rob the victim.  Hall states that the gas station attendant would have testified about whether the robbery was captured on surveillance videotape.  Hall contends that Landaverde's brothers, who were in the back of the van when the robbery occurred, would have refuted Landaverde's testimony that an armed robbery occurred.

In her affidavit to the state habeas corpus court, Burton explained that she did not request a continuance because she did not need any additional time to interview witnesses. *See Ex parte Hall*, No. 68,951-01 at 258-59.  Burton explained further that she did not subpoena these individuals to testify because none of them had any helpful information:

> My investigator interviewed Naomi Watson and she was not subpoenaed because she did not provide helpful information and she stated that she did not want to incriminate herself.  I do not recall [Hall] ever mentioning Jenovah Peoples and thus we did not try to locate her.  The attendant was interviewed and did not remember [Hall], nor offer any helpful information.  This attendant also stated that there was no videotape of the incident.  [Hall] stated that the victim's two brothers were asleep in the van and did not see anything so they were not investigated.

*Id.* at 259.  The state habeas corpus court rejected Hall's claim after finding that he failed to meet his burden to show:  (1) the identity of a witness who did not testify; (2) that the witness was available for trial; and (3) that the witness's testimony would have benefitted his defense.  *See id.* at 265 (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)).

The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review "because allegations of what a witness would have

testified are largely speculative." *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. Aug. 14, 2007) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). "Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations and quotations omitted). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Hall has not refuted his counsel's affidavit or the state habeas corpus court's express findings about the uncalled witnesses. As such, these findings are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Hall does not present an affidavit or other sworn account of the proposed testimony from any of the above-referenced witnesses. In that respect, Hall does not show that any of the individuals that he references would have testified if called or that any of the other witnesses would have offered favorable testimony on his behalf. Absent such a showing, Hall's claim is speculative and does not demonstrate either deficient performance on his trial counsel's part or actual prejudice. *See Sayre*, 238 F.3d at 636. Accordingly, Hall is not entitled to relief on the issue of whether his trial attorney failed to interview or call witnesses at trial.

### 3. Inadequate Pretrial Investigation

In addition to Hall's claims that his trial attorney failed to file motions on his behalf or to interview certain defense witnesses, he contends that Burton otherwise failed to conduct an adequate pretrial investigation.  (Doc. # 2, Supporting Memorandum, at 91-92; 95-96; 100-04; 134-38).  Hall alleges that Burton failed to review the original photographic line-up that was used to obtain his identification and that she did not review the videotaped statement that he gave to Detective Reese about his involvement in the offense.  Burton claims that, if she had reviewed the videotaped statement, she would have learned that Detective Reese referenced a surveillance videotape that reportedly depicted the alleged robbery, but failed to show that a deadly weapon was used.  Hall claims further that Burton failed to interview the State's witnesses and the court-appointed interpreter who translated for the victim (Julian Landaverde) at trial.  In addition, Hall complains that his attorney failed to conduct sufficient legal research prior to trial regarding the validity of the criminal complaint and that she generally failed to prepare for trial.

A habeas corpus petitioner who alleges a failure to investigate or prepare for trial on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial.  *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).  Hall fails to meet this burden here.  In her affidavit to the state habeas corpus court, Burton explained that she did not believe it was necessary or beneficial to conduct additional investigation or research on the issues that he raised.  *See Ex parte Hall*, No. 68,951-01 at 258.  For example, Burton stated that she attempted to subpoena the videotape from the gas

station where the robbery occurred.  *See id*.  However, her investigator spoke with three of

the gas station's employees and all three said there was no surveillance videotape of the

offense.  *See id*.  In addition, Burton reported that her investigator interviewed all of the

State's witnesses.  *See id*. at 259.  Burton explained that she did not interview the police

officers because they were not "fact" witnesses for purposes of the offense.  *See id*.

The record supports counsel's assessment that additional investigation of the sort

proposed by Hall offered little, if anything, to bolster his defense.  The record shows that,

although Burton did not review the original version of the photographic array used to obtain

Hall's identification, she did review a copy.  *See Court Reporter's Record*, vol. 4, at 93-94.

Hall does not allege facts explaining what difference it would have made for Burton to see

the original photographic array, rather than reviewing the copy.  Likewise, Hall does not

show how this would have changed the result of his trial.

Regarding the videotape, as noted above in connection with Hall's *Brady* claim, Hall

complains that Detective Reese lied to him during interrogation by telling him that

surveillance video from the gas station did not show him robbing the victim at gunpoint.

Hall claims that, if his counsel had reviewed the videotape, she could have argued that

Detective Reese tricked him into admitting that he was present when the offense occurred

and damaged Detective Reese's credibility as a witness.  As discussed elsewhere, the record

shows that Hall's counsel questioned Detective Reese about this precise issue during the

punishment phase of the trial.  *See Court Reporter's Record*, vol. 5, at 18-19.  The respondent

notes that, even assuming Detective Reese used deception to obtain an admission, Hall fails

to show that it would have benefitted his defense to tell the jury about his inculpatory statement or to show the videotape during the guilt/innocence phase of the trial. Counsel is not deficient for deciding not to present "double-edged" evidence. *See Johnson v. Cockrell*, 306 F.3d 249, 253 (5th Cir. 2002); *see also Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) (observing that "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance") (citing *Mann v. Scott*, 41 F.3d 968, 984 (5th Cir. 1994)).

Hall fails to articulate facts showing that his counsel had any reason to interview the court-appointed interpreter. Moreover, a review of the trial transcript shows that Hall's counsel capably cross-examined each of the State's witnesses. Hall does not identify any significant shortcoming as the result of any alleged failure to interview the police officers who investigated his case prior to trial and he does not show that her questioning techniques were deficient or that there was any adverse effect on the outcome of his proceeding.

Hall's contention that his attorney was deficient for failing to conduct pretrial legal research regarding the complaint's validity is without merit. Hall claims that, had his attorney performed adequate legal research, she could have objected to the fact that Detective Reese signed the criminal complaint that was presented to the grand jury, rather than the victim. In Texas, however, a criminal complaint does not require the victim's signature, but may be signed by any "credible person," such as a police officer. *See* TEX. CODE CRIM.

PROC. art. 21.22 (West 2008).  Accordingly, Hall's allegation fails to demonstrate any deficient performance on his attorney's part with regard to this issue.

To the extent that Hall alleges in general that Burton's failure to conduct adequate research into his case resulted in an insufficient defense, he does not propose a suitable alternative defensive theory.  Hall does not show that any of the proposed investigation or research would have changed the outcome of his trial.  Accordingly, even if his counsel was deficient for failing to pursue the issues that he identifies, Hall fails to show that he was actually prejudiced as a result of his counsel's performance.  *See Miller*, 420 F.3d at 361. It follows that Hall is not entitled to relief for his counsel's alleged failure to conduct an adequate pretrial investigation.

### 4.    Failure to Object During Jury Selection

Hall complains that his attorney was deficient during jury selection because "[a]ll available black prospective jurors were systematically excluded from serving."  (Doc. # 2, Supporting Memorandum, at 105).  Hall contends, therefore, that his attorney failed to object to the State's use of peremptory challenges against black jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

In *Batson*, the Supreme Court established the following three-part methodology for courts to use in adjudicating a claim that a peremptory challenge was impermissibly based on race:

> "'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror

in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.'"

*Snyder v. Louisiana*, — U.S. —, —, 128 S. Ct. 1203, 1207 (2008) (quoting *Miller-El v. Dretke*, 545 U.S. 231, at 277 (Thomas, J., dissenting) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 328-329 (2003)). *See also Soria v. Johnson*, 207 F.3d 232, 236 (5th Cir. 2000). To establish a *prima facie* case for habeas corpus relief, a defendant must demonstrate that the prosecutor exercised peremptory strikes against minority venire members and that the relevant circumstances raised an inference of purposeful discrimination. *Batson*, 476 U.S. at 96. An inference may be drawn from such circumstances as a "pattern" of strikes against minority venire members and the remarks made by a prosecutor during voir dire. *Id*. at 96-97.

In her affidavit to the state habeas corpus court, Burton explained that she did not raise a *Batson* objection to the prosecutor's peremptory challenges because she did not believe that any of the challenges were improper. *See Ex parte Hall*, No. 68,951-01 at 259. Burton emphasized that she did not believe that she had a valid *Batson* objection to make. *See id*. Other than his own conclusory allegations, Hall does not show that she did. The Fifth Circuit has made clear that conclusory ineffective-assistance claims of the type made by the petitioner do not merit federal habeas corpus relief. *See, e.g*., *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)), *cert. denied*, 537 U.S. 1084 (2002); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory

allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).

Hall fails to provide sufficient facts in support of his claim.  The record contains a copy of the voir dire as well as the jury lists compiled by the prosecutor and the defense for purposes of selecting the jury.  *See Court Reporter's Record*, vol. 3; *Clerk's Record*, at 107-112.  The Court's own review of these records does not disclose a *Batson* violation or show that Hall's counsel had, but failed to make, a valid objection.  Because Hall's conclusory allegations fail to demonstrate that he was denied effective assistance of counsel in connection with the prosecutor's use of peremptory challenges, he is not entitled to relief on this issue.

### 5.    Inadequate Questioning During Jury Selection

Hall notes that the prosecutor selected jurors who could convict based on the testimony of only one witness.  (Doc. # 2, Supporting Memorandum, at 106-07).  Hall complains that Burton failed to adequately question these potential jurors about their understanding of the term "beyond a reasonable doubt."  This issue is without merit because it is based on a misunderstanding of Texas law regarding the standard of proof in cases where the State's only witness is the victim as opposed to cases in which the State's only witness was an accomplice.

The respondent notes that Hall has confused the Texas "one-witness rule," which allows a conviction based on the testimony of only one witness with the rule that precludes a conviction based on the uncorroborated testimony of an accomplice, known as the Texas "accomplice-witness rule."  Under the Texas accomplice-witness rule, a person cannot be convicted on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed.  *See* TEX. CODE CRIM. PROC. art. 38.14 (Vernon 2005); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).  By contrast, a conviction can be supported with the uncorroborated testimony of one witness who is not an accomplice as long as the jury believes that witness beyond a reasonable doubt.  Importantly, a prospective juror may be challenged for cause if he indicates that he could not convict on the testimony of only one witness whom they believed beyond a reasonable doubt.  *See Lee v. State*, 206 S.W.3d 620, 623 (Tex. Crim. App. 2006).

The record reflects that the trial court informed the potential jurors about the one-witness rule, which does not require corroboration if the jury believes the witness beyond a reasonable doubt.  *See Court Reporter's Record*, vol. 3, at 29.  Consistent with this rule, the prosecutor discussed the "high burden" imposed by the reasonable-doubt standard and queried whether the potential jurors could determine guilt based on the testimony of one witness if they believed the witness's testimony beyond a reasonable doubt.  *See id.* at 47, 51-64.  Hall's attorney also discussed the standard of proof and asked the potential jurors if they could comply with that burden by requiring the prosecutor to prove all elements of the offense beyond a reasonable doubt.  *See id.* at 83-85.

30

Hall does not show that the prosecutor misrepresented the law or improperly questioned the potential jurors about the one-witness rule.  Likewise, he does not demonstrate that his counsel was deficient for failing to question these jurors appropriately about whether they could comply with the reasonable-doubt requirement.  Because Hall does not establish that his counsel was deficient or that he was denied effective assistance of counsel during jury selection, he is not entitled to relief on this issue.

### 6. Failure to Make an Opening Statement

Hall complains that his counsel was deficient because she did not give an opening statement.  (Doc. # 2, Supporting Memorandum, at 108).  The record reflects that Hall's attorney deferred making an opening statement, but made a lengthy closing argument in which she called the credibility of the State's witnesses into question and argued that the prosecutor failed to prove all elements of the offense beyond a reasonable doubt.  *See Court Reporter's Record*, vol. 4, at 102-08.  In her affidavit to the state habeas corpus court, Burton explained that she decided to waive an opening statement because she "wanted to wait to see what the State actually proved." *Ex parte Hall*, No. 68,591-01 at 261.  At that time, Burton did not yet know whether Hall would testify.  *See id*.  She explained that her strategy was "to avoid over promising and under delivering [her] case to the jury."  *Id.*

There is a strong presumption that the decision to waive opening statement is a matter of trial strategy. *See Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (finding that the decision not to present opening statement was a "matter of professional judgment" because the case against the defendant was strong); *see also Huffington v. Nuth*, 140 F.3d 572, 583

(4th Cir. 1998) (noting that waiver of opening statement is tactical decision and not objectively unreasonable).  In this case, trial counsel made a strategic decision to waive opening statement in order to more effectively challenge the State's evidence during closing argument.  *See Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) ("While opening and closing statements are not to be lightly waived in a capital case, it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel.").  Even if the decision could be deemed deficient, Hall fails to articulate how the absence of an opening statement resulted in any prejudice.  *See Nguyen v. Reynolds*, 131 F.3d 1340, 1350 (10th Cir. 1997) (holding that "[d]efense counsel's failure to make an opening statement was nothing more than a tactical decision that did not adversely affect [the defendant]").  Hall therefore fails to demonstrate a valid claim for ineffective-assistance of counsel on this ground.

### 7.    Failure to Object to the Prosecutor's Comments

In several related grounds, Hall complains that his counsel was deficient for failing to object to assorted comments made by the prosecutor during jury selection and during closing argument.   (Doc. # 2, Supporting Memorandum, at 111-15, 130-34).  During jury selection, Hall complains that the prosecutor commented on his right *not* to testify and asked the potential jurors to find him "not guilty" if the State could not prove its case without the defendant taking the stand.  Hall complains further that the prosecutor offered his own definition of the reasonable doubt standard and that he also asked whether jurors could consider the full range of punishment, which in Hall's case was twenty-five years to life.

Thus, Hall claims that the prosecutor sent a "subliminal message" to the jury that Hall had a lengthy criminal record. Hall complains further that, during summation, the prosecutor argued that the evidence showed that Hall was guilty and that his characterization was "highly prejudicial."

In her affidavit to the state habeas corpus court, Hall's counsel reviewed the list of comments identified by Hall as "objectionable," and explained that she did not believe that any of them were "clearly improper." *Ex parte Hall*, No. 68,951-01 at 259. She stated that even if the statements were "arguably improper," they were not the kind of statements that she "wanted to call additional attention to by objecting." *Id.* In addition, Hall's counsel explained that she "felt that the jury could hold it against [her] client if [she] was constantly objecting to statements that were either not improper or not really harmful to [her] client." *Id.*

The record, which fails to disclose any objectively improper comment or argument by the prosecutor, supports trial counsel's assessment. Hall fails to show that the prosecutor's comment during voir dire regarding the defendant's right not to testify violated the law. While it is true that the State may not comment on a defendant's failure to testify, *Griffin v. California*, 380 U.S. 609, 614 (1965), the record reflects that the prosecutor merely advised the jury that, as a matter of law, it was the defendant's right not to take the stand and that it was the State's burden to prove its case beyond a reasonable doubt. *See Court Reporter's Record*, vol. 3, at 47. Hall fails to show that the prosecutor's description of the reasonable doubt standard was legally incorrect. *See Paulson v. State*, 28 S.W.3d 570, 573

(Tex. Crim. App. 2000) (observing that there is no legal definition of "reasonable doubt" in Texas). Hall further fails to show that the prosecutor was precluded from asking whether the potential jurors could consider the full range of punishment under Texas' enhanced sentencing scheme. *See Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. 1982) (holding that "a prosecutor may inform the jury panel of the range of punishment applicable if the State were to prove a prior conviction for enhancement purposes"). Accordingly, Hall fails to show that his attorney had a valid objection to make during jury selection.

Likewise, Hall fails to show that the prosecutor's comments during summation exceeded the boundaries of acceptable argument. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) ("Jury argument [in Texas] is appropriate if it falls within one of the following: (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to argument of opposing counsel; and (4) a plea for law enforcement."). The record reflects that, in his closing argument at the guilt/innocence phase, the prosecutor argued that Hall was guilty because the evidence proved he was guilty beyond a reasonable doubt. The record further shows that, during the punishment phase, the prosecutor outlined Hall's extensive criminal record and the evidence showing that he stole from an 81-year-old grandmother before robbing Julian Landaverde at gunpoint as proof that Hall deserved a lengthy prison sentence. To the extent that Hall complains that the prosecutor engaged in misconduct, Hall fails to show that his comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). In that respect, Hall does not demonstrate that his trial was tainted by prosecutorial misconduct, but

that his counsel failed to object to his remarks.  Accordingly, Hall fails to show that his counsel was deficient for failing to object or that he is entitled to relief on this issue.

### 8.    Failure to Present Defensive Theories

Hall argues that his counsel was deficient for failing to present a defense based on the lack of corroborating evidence and the "*corpus delicti* rule."   (Doc. # 2, Supporting Memorandum, at 109, 128-29).   Hall contends further that his counsel was deficient for failing to prove that he had an alibi.  (*Id.* at 110).  The respondent maintains that these claims are without merit.

As the respondent correctly notes, Hall's entire defense was the lack of corroborating evidence.  *See Court Reporter's Record*, vol. 4, at 102-08.  The respondent notes further that the Texas *corpus delicti* rule requires independent evidence to corroborate extrajudicial confessions.  *See Bible v. State*, 162 S.W.3d 234, 247 (Tex. Crim. App. 2005) ("The corpus delicti doctrine requires that evidence independent of a defendant's extrajudicial confession show that the 'essential nature' of the charged crime was committed by someone.").  In this case, Hall does not dispute that he was at the gas station when the robbery occurred, but claims that he did not commit armed robbery.  Because Hall did not confess to the robbery, his counsel had no basis to raise the *corpus delicti* rule.  He further fails to demonstrate that he had an alibi which showed he was elsewhere when the offense occurred.

Hall fails to establish deficient performance or actual prejudice and he does not demonstrate that he was denied effective assistance of counsel as a result of the alleged failure to present either of the above-referenced defensive theories.  Accordingly, Hall's ineffective-assistance claim on this  issue does not warrant relief.

### 9.     Inadequate Cross Examination and Impeachment

Hall complains that his counsel failed to adequately impeach Landaverde's version of the events with testimony from the gas station attendant.   (Doc. # 2, Supporting Memorandum, at 119-20).   Hall complains further that his counsel's cross-examination of Detective Reese was inadequate because she failed to introduce his videotaped statement to police or to show that Detective Reese lied about the robbery being captured on surveillance video in order to trick him.   (*Id.* at 123-25).

As noted above, Hall's claim concerning the gas station attendant is speculative because he offers no sworn statement or other details about his proposed testimony.   Hall's conclusory allegations fail to show that the gas station attendant would have testified on Hall's behalf or that his testimony would have had any impeachment value. Therefore, as discussed further above, Hall fails to show that his counsel was deficient for failing to call the gas station attendant as a witness for purposes of impeachment.

Likewise, as noted previously, counsel's choice not to introduce the double-edged videotaped interview between Detective Reese and Hall, in which Hall admitted being at the gas station but denied committing armed robbery, was not an objectively unreasonable or deficient strategy. *See Johnson*, 306 F.3d at 253; *Rector*, 120 F.3d at 564.   Moreover, Hall's counsel did cross-examine Detective Reese about his interrogation techniques and accused him of lying to Hall in order to elicit an admission.   *See Court Reporter's Record*, vol. 5, at 18-19.   Even if defense counsel was somehow deficient for failing to challenge Detective Reese's interrogation tactics during cross-examination, this would not be "the type of error

36

. . . that the Sixth Amendment functions to correct," because "courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997). Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of collateral review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). Hall has not shown that his counsel's strategy was deficient or that his trial was rendered unfair as a result of her cross-examination of Detective Reese. As such, Hall's allegations of ineffective assistance on this issue do not merit relief.

### 10.    Denial of the Right to Testify

Hall complains that his counsel was deficient because she denied him the right to testify during the guilt/innocence phase of the trial. (Doc. # 2, Supporting Memorandum, at 125). A criminal defendant has a fundamental constitutional right to testify on his own behalf. *See Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (citation omitted). This right is granted to the defendant personally and not to his counsel. *See id.* The Fifth Circuit has recognized that a defendant may waive his right to testify, and that defendants frequently do so on the advice of counsel. *See id.* Thus, there is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify — even if the defendant decides later, in hindsight, that he should have testified. *See id.* Instead, a violation of this right occurs only if the "final decision that [the

defendant] would not testify was made against his will." *Id.* (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 990), *rehearing granted*, 953 F.2d 1525 (11th Cir.), *cert. denied*, 506 U.S. 842 (1992)).

In her affidavit to the state habeas corpus court, counsel explained that she told Hall that it was his decision whether to testify but informed him that the jury would likely learn of his criminal record as a result:

> I fully informed [Hall] of his right to testify and discussed this issue with him at length. I informed him that he had the absolute right to testify and that the decision was his to make. I also informed him of the possible consequences of testifying including the fact that the jury would hear of his prior convictions during the guilt/innocence phase.
>
> *    *    *    *
>
> [Hall] did not want to testify during the guilt/innocence phase. We discussed this issue both before trial and at the close of the State's evidence when the Judge gave us time to talk about this decision. At this point in the trial when his decision was necessary, [Hall] stated that he did not want to testify during guilt/innocence. Later, when he testified during punishment he claimed he had wanted to testify earlier, but this was not true. I have never prevented a client from testifying.

*Ex parte Hall*, No. 68,951-01 at 260. The record supports counsel's claim that Hall acquiesced with her advice and elected not to testify during the guilt/innocence phase of the trial, but that he changed his mind after the jury returned its guilty verdict. The record reflects that, at the close of the State's case-in-chief, the trial court gave Hall and his counsel time to discuss whether he would testify:

PROSECUTOR:     State rests.

COURT:          What says the defense?

38

DEFENSE:         May we approach, Your Honor?

COURT:         Yes.

(*At the Bench, on the record.*)

DEFENSE:         Can I have three or four minutes to talk to my client [about] whether he wants to testify?  We were talking about it before we started, but he hadn't made a decision.

*Court Reporter's Record*, vol. 4, at 97-98.  After a short recess of ten minutes, the defense rested without presenting testimony from Hall.  *See id*. at 98.  Hall did not disagree or voice any objection.  *See id*.  The following day, before the start of the punishment phase, Hall addressed the trial court and complained that he had wanted to testify, but that his attorney advised against it.  *See Court Reporter's Record*, vol. 5, at 5.  The trial court found that, by not voicing his intention to testify, Hall waived that right:

COURT:         . . . [O]n not testifying, a defendant has the right to testify.  We broke yesterday and you were — had the opportunity to visit with your attorney and I think — I don't know your name.

INVESTIGATOR:  Sandra.

COURT:         . . . was a part of that conversation.  And when you came back out, I can't recall what is on the record then, but I know that while you were sitting there, your attorney did say, We are resting — we're not putting on evidence and you sat there quite comfortably.  You did not stand and say, I do want to testify.  That's what we had talked about.  And you were in here five, ten minutes maybe talking about other things or silences and so you still have the right to testify. You can testify in this portion of the trial. I assume that the two of y'all had a discussion in that regard.

> So the State will be putting on evidence and we will —
> after they put on their evidence, I'll take the jury out,
> allow y'all some time and I will make sure and visit on
> the record with you to say whatever determination that is,
> that you — on the record that y'all are agreeing to that
> decision.

*Court Reporter's Record*, vol. 5, at 8.  After the State rested its punishment case, the trial

court enquired whether Hall wished to testify.  *See id*. at 34.  When Hall said that he did,

there was no further discussion on the record.  *See id*.  During his testimony, Hall admitted

having a lengthy criminal record and a drug addition to cocaine.  *See id*. at 38-41.  Hall

conceded that he was high on drugs when he confronted the victim at the gas station and

asked for his cell phone, but denied "pull[ing] a gun on Mr. Landaverde."  *Id.* at 41.  Hall

insisted that he was "helping another lady who had a flat tire" and he argued that Landaverde

lied about the robbery.  *Id.*

To the extent that Hall did not take the witness stand during the guilt/innocence phase

of the trial based on his counsel's advice, he cannot show that he was denied his

constitutional right to testify.  *See Jordan*, 34 F.3d at 312.  Hall does not demonstrate that his

counsel's advice with regard to this issue was constitutionally deficient.  In that respect, the

record confirms that Hall had numerous criminal convictions for felonies or crimes of moral

turpitude, which the State gave notice of its intent to use for purposes of impeachment.  *See

Clerk's Record*, at 9.  Under these circumstances, it was not unreasonable for counsel to

advise against disclosing this information during the guilt/innocence phase of the trial.

Even assuming that counsel was somehow deficient for interfering with Hall's right

to testify, Hall fails to demonstrate actual prejudice.  In that regard, Hall does not point to a

version of the proposed testimony that he would have given if he had taken the witness stand during the guilt/innocence phase of the trial.  Presumably, Hall would have testified as he did at the punishment phase of the trial that he was at the gas station with Jenovah Peoples, helping her to change a tire, and that he accidently left with Landaverde's cellphone.[6]  Hall's story, when compared to the victim's testimony, strains credulity.  In light of the evidence against him, Hall fails to show how his testimony would have made a difference in the outcome of the proceedings.  *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001)

---

[6]     The pleadings reflect the following version of the events, based on what Hall alleges that Jenovah Peoples would have told the jury if she had been called as a witness:

> Jenovah Peoples could have testified to the fact that [Hall] was indeed trying to assist her in getting her tire fixed, and that they were at the Texaco Truck Stop and that [Hall] did go inside to see if he could get her tire fixed and that [Hall] came back and informed her that the station didn't repair 4 wheeler tires, and that she did ask [Hall] if he would try to assist her by allowing someone to obtain $30.00 dollars [sic] worth of gas on her credit card for $20.00 in cash so that [Hall] could perhaps take her to some nearby independent tire shop to get her tire repaired.  She could have also testified to the fact that [Hall] never robbed Julian Landaverde, nor did he ever display a weapon, nor did she ever see a weapon, or [Hall] take Julian Landaverde's wallet because she was sitting in the car directly where she could see [Hall] and Julian Landaverde.  She also could have testified to the fact that when [Hall] finished explaining on the cellphone about the delay he was having in picking someone up to take them to out-patient treatment, he sat the cellphone down on the console and never used it again.  She also could have testified to the fact that when [Hall] got her tire repaired from the tire shop off of Reed [Road], he did mention when he got back in the car that he had forgot to five that spanish guy [sic] his phone back, and that when we were returning to her car that was on the 288 [Highway], just South of Reed [Road], we did go back by the Texaco Station hoping that the guy might be waiting for us to come back and return the cell phone.  However, he had left the station.

(Doc. # 2, Supporting Memorandum, at 98).

("Considering the overwhelming evidence of [defendant's] guilt, we cannot conceive of anything [defendant] could have said that would have provided *any* reasonable possibility of a different outcome."); *see also United States v. Mullins*, 315 F.3d 449, 456-57 (5th Cir. 2002) (holding that, even where a counsel's performance was found deficient for failing to honor his client's request to testify, there was no valid ineffective-assistance claim absent a showing of actual prejudice); *United States v. Willis*, 273 F.3d 592, 598-99 (5th Cir. 2002) (same). In that regard, the jury heard Hall's version of the incident involving Landaverde during the punishment phase of the trial and they were unpersuaded, sentencing him to serve forty years in prison.[7] *See Court Reporter's Record*, vol. 5, at 60-62.

Hall has not established that his counsel's performance was deficient with regard to his right to testify or that he was actually prejudiced as a result. Absent a showing of deficient performance or actual prejudice, Hall fails to demonstrate a valid claim of ineffective assistance of counsel in connection with his right to testify. To the extent that the state court rejected his claim, Hall further fails to establish that this decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Accordingly, Hall is not entitled to federal habeas corpus relief on this claim.

### 11.   Failure to Request a Jury Instruction

Hall complains that his counsel was deficient for failing to request a jury instruction on the weight afforded to uncorroborated testimony. (Doc. # 2, Supporting Memorandum,

---

[7]      After the jury returned its verdict, Hall thanked them for not giving him life in prison and told them that he was "going to be all right." *See* Court Reporter's Record, vol. 5, at 62.

at 133-34).    As the respondent notes, this type of jury instruction pertains to the uncorroborated testimony of an accomplice witness.  Because the State's case against Hall did not feature this kind of testimony, Hall fails to show that he was entitled to such a jury instruction, that his counsel was deficient for failing to ask for one, or that the trial court erred by failing to give this instruction.  Therefore, Hall's ineffective-assistance claim on this issue is without merit.

### 12.    Failure to Object to the Grand Jury Composition

Hall, who is African-American, contends that his counsel was deficient for failing to object to the racial composition of the grand jury.  (Doc. # 2, Supporting Memorandum, at 140).  In order to secure federal habeas relief on this ground, a petitioner must show (1) that he is a member of a race or identifiable group singled out for different treatment under the state laws, as written or applied, (2) the degree of underrepresentation of his group by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors over a significant period of time, and (3) that the selection procedures employed are susceptible to abuse or are not racially neutral.  *See Castaneda v. Partida*, 430 U.S. 482, 494 (1977).  Hall has failed to present competent evidence to show that African-Americans have not been represented on Harris County grand juries over a significant period of time in proportion to their numbers in the total population.  His conclusory allegations of discrimination are insufficient to warrant relief on this issue.  *See Ellis v. Lynaugh*, 873 F.2d 830, 839 (5th Cir. 1989) (citing *Enriquez v. Procunier*, 752 F.2d 111, 115 (5th Cir. 1984)).

It follows that Hall fails to state a valid ineffective-assistance claim regarding his counsel's failure to object.

### 13.   Failure to Consult and General Ineffectiveness

Many of Hall's ineffective-assistance claims rest on his general assertion that trial counsel was deficient because she failed to confer with him sufficiently in order to establish a valid defensive theory or to demonstrate his actual innocence.   (Doc. # 2, Supporting Memorandum, at 115-16, 138-40).  In her affidavit to the state habeas corpus court, Burton reports that she consulted with Hall "throughout the representation."  *Ex parte Hall*, No. 68,951-01 at 260.  Burton states that she spent many hours with Hall, as did her investigator. *See id*.  Hall does not allege specific facts showing that his attorney spent insufficient time with him to prepare a defense.  More importantly, Hall does not demonstrate that, but for his counsel's failure to consult or confer, he was denied the opportunity to present a valid defense.

The Court has reviewed the trial record and finds that counsel presented a coherent theory of her case in Hall's defense, that she capably cross-examined the State's witnesses, that she lodged appropriate objections where necessary, and that she represented Hall to the best of her ability in light of the facts, which included Hall's lengthy criminal record and his self-professed history of drug use.  Based on this record, Hall fails to establish deficient performance or actual prejudice and he does not establish that he was denied effective assistance of counsel as the result of any alleged failure to communicate.  Accordingly, he fails to demonstrate that he was denied effective assistance of counsel at his trial because of any alleged failure to consult or to present an adequate defensive strategy.

### 14.    Ineffective Assistance on Appeal

Hall contends that his appellate attorney, Ted Doebbler, was ineffective because he failed to raise an issue concerning the victim's failure to sign the criminal complaint. (Doc. # 2, Supporting Memorandum, at 143).   In that respect, Hall insists that the criminal complaint was invalid because it was signed by Detective Reese.   Hall complains further that his appellate attorney was deficient for failing to raise an issue about his trial attorney's "conflict of interest."   (*Id.* at 144-46).   The state habeas corpus court rejected this claim, finding that Hall failed to demonstrate that his appellate counsel was deficient or that he suffered any actual prejudice.   *See Ex parte Hall*, No. 68,591-01 at 265-66.

A claim of ineffective assistance on appeal is governed by the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to establish both constitutionally deficient performance and actual prejudice.   *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal).   To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.   *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal."   *Id.*

The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Robbins*, 528 U.S. at 278.   Appellate counsel is not deficient for not raising every non-frivolous issue on appeal. *United States v. Reinhart*, 357 F.3d 521, 524 (5th Cir. 2004) (citing *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 2000)).   To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness." *Id*. This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.* "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.*

For reasons discussed above, Hall fails to show that the victim was required to sign the criminal complaint by Texas law, which only requires the signature of a "credible person."  TEX. CODE CRIM. P. art. 21.22.  Hall's claim concerning his trial counsel's alleged conflict of interest is likewise without merit for reasons outlined below.  Hall does not identify any non-frivolous claims that his counsel could have, but did not, raise on appeal. Because he does not establish deficient performance or actual prejudice, Hall fails to show that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, the *Strickland* standard.  Therefore, Hall is not entitled to federal habeas corpus relief on this issue.

In summary, Hall has failed to demonstrate a valid claim for ineffective assistance of counsel under the *Strickland* standard.  Hall does not otherwise establish that the state court's

decision to reject any of his ineffective-assistance claims was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).  Therefore, he is not entitled to federal habeas corpus relief on these claims.

### D.    Conflict of Interest

Hall contends that he is entitled to relief because his trial attorney had a conflict of interest.  In particular, Hall claims that his trial attorney had a conflict of interest because she represented Hall's brother previously in a divorce proceeding.  The respondent argues that this claim is without merit.

It is recognized that a potential conflict of interest can arise when an attorney represents multiple clients whose interests are adverse.  *See Cuyler v. Sullivan*, 446 U.S. 335 (1980).  To prevail with a claim under the standard announced in *Sullivan*, a defendant need only show that an actual conflict of interest adversely affected his attorney's performance.  *Id.* at 345-50; *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000) (*Perillo II*); *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (en banc).  Once a defendant makes this showing, "prejudice is presumed without any further inquiry into the effect of the actual conflict on the outcome of the defendant's trial."  *Perillo II*, 205 F.3d at 782 (citations omitted).

In her affidavit to the state habeas corpus court, Hall's counsel denied having any conflict of interest.  *See Ex parte Hall*, No. 68,951-01 at 261.  She stated that she did not realize she had represented Hall's brother until trial when Hall mentioned his brother as a possible character witness.  *See id.*  Counsel maintained that her previous representation of Hall's relative had "no effect" on her representation of Hall and could not see any reason that

it should have.  *Id.*  Based on counsel's "credible" affidavit, the state habeas corpus court rejected Hall's claim for relief based on the alleged conflict of interest.  *See id*. at 264-66.

Hall does not allege or show that his counsel actively represented a conflicting interest at any time or that he labored under an actual conflict that adversely affected his counsel's performance.  Likewise, Hall does not allege facts showing that his attorney's performance was affected by his prior representation of Hall's brother;  nor has Hall demonstrated that his counsel's performance fell below an objective standard of reasonableness and prejudiced his case as a result of any actual conflict on his counsel's part.  Accordingly, he fails to show that the state court's decision to reject this claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  It follows that he is not entitled to relief on this issue.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

48

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Doc. # 10) is **GRANTED**.

2.      The petition for a writ of habeas corpus (Doc. # 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  December 24,  2008.

Nancy F. Atlas
United States District Judge